**In re COLE.**

**In re ROSSMAN.**
**Nos. 47772, 47773.**

United States District Court
E. D. New York.
Feb. 10, 1950.

Abraham L. Popper, New York City, for trustee.

Louis P. Rosenberg, Brooklyn, N. Y., for bankrupts.

BYERS, District Judge.

The questions presented by these petitions to review the orders of a Referee in Bankruptcy, denying discharge, are identical and will be treated in one opinion. Reference to Cole as an individual herein is to be interpreted likewise as to Rossman in the second proceeding.

This bankrupt was treasurer and one of the two officers (Rossman was president) of Glorian Distributors, Inc., the debtor in a Chapter XI reorganization in this Court, according to Petition filed May 19, 1947, as to which a plan was confirmed by Referee's order of April 18, 1948.

The presently material provisions thereof involved the payment of 15 per cent. in cash to creditors, and 25 per cent. ($25,-139.90) in five notes of 5 per cent. each, bearing the indorsement of this bankrupt and the president Rossman, the first being due October 18, 1948. By the terms of the order, jurisdiction of the Court was in terms continued "until the fulfillment of the obligations to be performed by the debtor". None of the notes was ever paid.

The cash in bank at the time of the order of confirmation was $12,616.59, which was increased by the addition of $252.01, a total of $12,868.60, or about ten times the amount which would be required to meet the first of the five per cent. notes.

Between May 1, 1948, and September 22, 1948, the entire cash (all but $1.16) was taken by this bankrupt and the other for their personal uses, and on October 21, 1948, they filed their respective individual petitions in bankruptcy, disclosing in effect no assets.

The Trustee filed specifications of objection to each discharge:

1. Failure to keep books.

2. (A) Fraudulent appropriation, etc., of property belonging to the debtor Glorian Distributors, Inc., "while the bankrupt occupied the status of an officer of this Court". The items are set forth.

(B) With intent to defeat the Bankruptcy Act, he received a material amount of property from the said debtor, Glorian Distributors, Inc., while it continued under the jurisdiction of this Court according to the said order of confirmation; five items described in 2(A) being listed.

(C) "In contemplation of proceedings under the Bankruptcy Act against the abovesaid Glorian Distributors, Inc., and with intent to defeat the Bankruptcy Act, the bankrupt transferred property of the said Glorian Distributors, Inc., (which) consisted of all of the items of property enumerated in sub-paragraph A of this specification of objection #2".

There apparently is no dispute as to the facts, which are more completely stated in the Referee's opinion denying discharge and upholding specifications 1, 2(B) and 2(C).

The errors urged in behalf of the petition for review are addressed to each of the above.

As to specification 1, it is urged that, since the bankrupt became a salesman during 1948, namely, a wage earner, his failure to keep books is not to count against his discharge. It appears from the testimony that he took employment as a salesman in September, 1948, which continued to be his occupation until the hearing of July 7, 1949. The taking of funds of Glorian began as soon as the order of confirmation was signed and continued until there was nothing left of the debtor's money. To argue that he was not required to keep books as to those funds, is to ignore the debtor proceedings of the Glorian corporation and the responsibility in connection therewith that attached to the two officers; also to ignore the individual obligation which he assumed by indorsing the notes which formed part of the arrangement, but which he has been careful to recognize by including all holders thereof as his creditors in this proceeding; the Trustee and those creditors are entitled to know from his books and records, what he did with the money he so siphoned from the corporate reservoir, and his failure to maintain such records deprives those note holders of an opportunity to ascertain his financial condition and business transactions in reference to those funds. This is apart from his earnings, part salary and part commissions, as a salesman up to the filing of his petition, namely, during September and October, 1948.

■ The holding of the Referee on this subject is clearly required by the evidence.

The subdivisions of specification 2 have been separately dealt with by the Referee, and his dismissal of the first on the ground that this bankrupt was not an officer of the Court when he unlawfully appropriated to his own use, i. e., stole, the money of Glorian Distributors, Inc., is not appealed from by the Trustee on this motion, and therefore is not before the Court. If it were, it would require careful consideration in light of the manifest purpose of the Statute governing Chapter XI proceedings.

Specifications 2(B) and 2(C), having been sustained by the Referee, are urged by the bankrupt to be legally insufficient; as to the former, because of an asserted legislative delay arising from the transfer of old Section 29 of the Bankruptcy Act to Title 18 U.S.C.A. § 151 et seq.

Section 14, sub. c of the Act, Title 11 U.S.C.A. § 32, sub. c bars a discharge if the bankrupt has "committed an offense punishable by imprisonment as provided *under this title*". (Italics supplied.)

Since Section 29 of the Act came to an end on September 1, 1948, it is argued that Section 14, sub. c was necessarily devitalized; since technically there was no offense punishable under the Bankruptcy Act from and after September 1, 1948, even though there was one which would have been punishable under Title 18 U.S.C.A. § 152, had Congress so enacted, therefore these unlawful takings did not constitute a bar to discharge until the Act of May 24, 1949, when Congress amended Section 14, sub. c (1) so as to refer in terms to "Title 18 U.S. C.A. § 152". In other words, that during the interval this bankrupt was free to loot the treasury of his corporation, despite the Court's retention of jurisdiction under the Chapter XI proceeding, without endangering his own chances of qualifying for a personal discharge.

I should not suppose that the Bankruptcy Court would be hampered by any such technical construction of Section 14 sub. c (1), and that for the purposes of passing upon the application for discharge, it would be of no consequence whether the larceny of corporate funds was in contravention of the Bankruptcy Act, or the U.S.Code Annotated entitled "Crimes and Criminal Procedure".

■ Further, that the legislation of May 24, 1949, was for the purpose of clarification only, and added nothing in any substantive sense to what was already the law. Even if this view is mistaken, the Referee has pointed out that the technical argument evaporates in light of the clause in the repealing Act of June 25, 1948, P.L. 772, 80th Congress, which provides that the repeal of existing statutes is exclusive of

"Any rights or liabilities now existing * * *". 62 Stat. 862, § 21.

The liabilities of this bankrupt, which were existing on the date of the repealer, embraced his responsibility for the unlawful taking by him of corporate funds as specified, in whole or in part, the purposes being partly mentioned in specification 2(A) of the objections, and which, as I read the scanty testimony, are not denied; and the personal expenditure of some or all of those funds by the bankrupt to defeat the Bankruptcy Act, and the carrying into effect of the plan which was approved by order of the Court, as stated.

In this connection, I do not think the payment on June 7, 1948, of $1,000.00 to an attorney by the name of Berman, "to hold * * * for Mr. Rossman and myself so in case any debts of Mr. Rossman's or myself had to be paid out. It was in case it had to be paid to the corporation, if people might sue the corporation, and that he would pay that out to those people", has been adequately accounted for.

The foregoing indicate some of the "rights and liabilities" which were saved by the terms of the statute of repeal.

As to 2(B) and 2(C), the attempt as alleged to defeat the Bankruptcy Act, § 29, the transfer of which to Title 18 U.S.C.A. § 151 et seq. has been stated, the argument is that what was defeated by the conduct of Cole was the operation of the plan offered by the Glorian corporation, and not the law as it applies to him as an individual.

The Referee clearly states the dual effect of depriving the corporate creditors and his own (who were such by virtue of his endorsement of the 25% settlement notes) of any funds whatever in connection therewith, and the means whereby that purpose was effected. In this aspect of the case, it matters not whether the statute which was violated was found in the Bankruptcy Act, or in the Federal Code of Crimes and Criminal Procedure. The conduct which the evidence reveals was repugnant to both in equal measure, and the former was in effect during most of the time covered by Cole's depredations.

Raphiel v. Morris Plan Industrial Bank of New York, 2 Cir., 146 F.2d 340, is relied upon for the bankrupt to sustain his final argument against the decision of the Referee. The reasoning is not convincing since no question is presented here of Cole's seeking discharge from debts proved against him in his own earlier bankruptcy.

The Glorian arrangement at the instance, it must be assumed, of both Cole and Rossman, involved their personal endorsement of the notes of the corporation. Thus the performance of the plan became a joint undertaking of the corporation and its only two officers and directors. To that extent, they identified themselves with the carrying of the plan into effect, which means, at least, that they engaged not to render it incapable of performance by their own malfeasance. The Raphiel case is entirely remote from such a state of affairs.

The retention of jurisdiction of the Court, according to the terms of the order approving the plan, would have supported, in my opinion, any proper judicial intervention to prevent the looting of the corporate treasury by those whose responsibility to administer the plan was agreed to by the Court in the belief that they were to be trusted, had such been timely called to its attention.

Petition to review denied. Settle order.